UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


ANTHONY JAMES PETERSON,

      Petitioner,

v.                                                                         Case No. 1:17cv301-AW-HTC

MARK S. INCH,

      Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Petitioner Anthony James Peterson's ("Peterson") petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF Doc. 1. Respondent filed a response (ECF Doc. 31), and Peterson was given an opportunity to file a reply (ECF Docs. 34 & 35) but failed to do so. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).

As explained further below, Petitioner asserts four grounds for relief: (1) appellate counsel was ineffective for failing to raise on direct appeal trial counsel's failure to move for a judgment of acquittal based on a lack of evidence that the male minor victim was less than twelve years old; (2) appellate counsel was ineffective for failing to raise on direct appeal that the trial court committed fundamental error in misreading the jury instruction for sexual battery of the male minor victim; (3)

trial counsel was ineffective for failing to move for a severance of Count I from Count II; and (4) trial counsel was ineffective for failing to impeach the male minor victim and his mother.  ECF Docs 1-3.  For the reasons set forth below, the undersigned recommends the Petition be **DENIED** without an evidentiary hearing.

## I.    Factual Background and Procedural History

On January 24, 2013, Peterson was convicted of one count of Lewd and Lascivious Molestation of a Child (S.G.B, a minor female) (Count I)[1] and one count of Sexual Battery on a Child Under 12 Years of Age (J.C.B., a minor male) (Count II).  ECF Doc. 31-1 at 130.  S.G.B. and J.C.B. are siblings.  J.C.B. is older than S.G.B. by two years.  Peterson was their mother's boyfriend, who lived with them when S.G.B. was about seven until she was about twelve years old.

At trial, both minor victims testified, as did their mother.  ECF Doc. 31-2 at 57 to 31-3 at 36. (Trial & Sentencing Transcript).  Peterson did not testify.  After the jury found him guilty, the trial court sentenced Peterson on January 24, 2013, to a term of life imprisonment on each count, to run consecutively.  ECF Doc. 31-1 at 133-34.

Peterson filed a motion for new trial on February 1, 2013, ECF Doc. 31-1 at 149, which was denied by written order on February 6, 2013.  *Id.* at 151.  Peterson

---

[1] The information charged Peterson with sexual battery as to SGB and JCB.  However, the instructions to the jury on Count I as to S.G.B. also included the lesser offenses of lewd and lascivious molestation of a child and simple battery.  Only the lesser offense of simple battery was included in Count II as to J.C.B.  *See*  ECF Doc 31-1 at 116 (amended information) & 121 (jury instructions).

appealed his conviction and sentence to the First DCA, ECF Doc. 31-1 at 167-69, which affirmed *per curiam* without written opinion on April 8, 2014.[2]  ECF Doc. 31-4 at 152.  The mandate was issued April 24, 2014.

Peterson then filed a motion under Florida Rule of Criminal Procedure 3.850 on June 16, 2015.  ECF Doc. 31-5 at 24.  The state court denied the 3.850 motion in part and granted it in part with a written order on August 1, 2016.  ECF Doc. 31-5 at 169.  Specifically, the court found that the statute of limitations had run on the lewd and lascivious offense, that Peterson had not waived the statute of limitations and, thus, that the trial court should not have included the lesser offense of lewd and lascivious conduct in its jury instructions on Count 1 as to S.G.B.  This was because the charge carried a four-year limitations period which began running in 2004 when the allegations regarding S.G.B. had initially been reported to law enforcement.  Thus, the Court vacated Peterson's conviction and sentence as to Count I.  However, the state court denied relief on the conviction and life sentence on Count II, which charged sexual battery of J.C.B.  *Id.* at 169-78.  The First DCA affirmed the decision *per curiam* without written opinion.  ECF Doc. 31-6 at 2.[3]  The mandate issued on July 6, 2017.  31-6 at 4.

Meanwhile, Peterson had also filed a habeas corpus petition with the First DCA, alleging ineffective assistance of appellate counsel.  ECF Doc. 31-6 at 6.  The

---

[2] Judges Benton, Van Nortwick and Thomas concurred.
[3] Chief Judge Roberts and Judges Winokur and M.K. Thomas concurred.

First DCA denied the petition *per curiam* without written opinion.  ECF Doc. 31-6 at 29.[4]  A motion for rehearing was denied November 28, 2017.  ECF Doc. 31-6 at 38.

## II.    Timeliness

Peterson's petition is timely filed because it was filed within one year of the judgment at issue being final, including periods of time when the limitations period was tolled by the filing of a Rule 3.850 motion or state habeas petition.  28 U.S.C. § 2244(d)(1), (2).  Specifically, Peterson's judgment became final on July 7, 2014, ninety (90) days after the First DCA affirmed the judgment on direct appeal.  *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("the entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review, within the meaning of Supreme Court Rule 13.3 and 28 U.S.C. § 2244(d)(1)(A)").  Peterson filed his 3.850 motion on June 16, 2015, 344 days later, tolling his limitations period.  ECF Doc. 31-5 at 24.

Before the mandate was issued affirming the order resolving the 3.850 motion, Peterson filed a petition for writ of habeas corpus in the First DCA, on April 20, 2016.  ECF Doc. 31-6 at 6.  That motion also tolled Plaintiff's limitations period for filing his federal habeas petition until November 28, 2017, when the First DCA

---

[4] Judges Roberts, Wetherell, and Rowe concurred.

denied his motion for rehearing its denial of his petition for writ of habeas corpus. *Id.* at 38. Thereafter, the one-year limitations period commenced running again and continued to do so until December 4, 2017, when Petitioner filed the instant federal petition. Because Petitioner had another fifteen (15) days before the limitations period under the AEDPA expired, his petition is timely.

## III. Legal Standards

### A. Federal review of state court decision

Under the standard of review for a § 2254 motion, this Court is precluded from granting habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000). *See id.*, at 412-13 (O'Connor, J., concurring). Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43,

47 (2010). Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the … case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

Finally, in determining whether the state court's decision "was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the state court's determination of factual issues is presumed correct. *See Parker v. Head,* 244 F.3d 831, 835 (11th Cir. 2001). The burden is on the petitioner to rebut that presumption of correctness by clear and convincing evidence. *See id.* at 835-36; 28 U.S.C. § 2254(e)(1); *see also*, *Siplen v. Sec'y, Fla. Dept. of Corr.*, 649 F. App'x 809, 811 (11th Cir. 2016). Additionally, this Court must accept the state court's credibility determinations. *See Baldwin v. Johnson,* 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsels'] testimony over [petitioner's].")*; see also, Consalvo v. Sec'y for Dept. of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("[d]etermining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review").

B.    Standards for an Ineffective Assistance of Counsel Claim

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations that the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

The same deficient performance and prejudice standards apply to appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal. If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice. *See Joiner v. United States*, 103 F.3d 961, 963 (11th Cir. 1997). Counsel is not deficient for failing to raise non-meritorious claims on direct appeal. *See Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1144-45 (11th Cir. 2005).

## IV.    Analysis

### A.    Ground One: Failure to Move for Acquittal

Peterson argues appellate counsel was ineffective for failing to raise on direct appeal trial counsel's ineffectiveness for failing to move for a judgment of acquittal at the close of the State's case as to Count II, for sexual battery against J.C.B.  ECF Doc. 1 at 4.  Specifically, he argues the prosecution failed to present evidence showing that J.C.B. was *under* 12 years old at the time the sexual battery occurred because the testimony from J.C.B. was that he was "between 8 and 12" when the four instances of sexual battery occurred.  Additionally, Peterson argues that the time of the offenses as stated in the amended information is "between January 1, 2000 and December 31, 2004," and J.C.B. turned twelve on December 24.  Thus, there was a 7-day period when J.C.B. was not *under* 12.  Since J.C.B.'s testimony did not

state any exact dates for when the episodes of oral sex occurred, Peterson argues that trial counsel should have moved for a judgment of acquittal because the victim "was over 11 years of age for seven days of the alleged time frame enumerated in the information."  ECF Doc. 1 at 5.

Peterson raised this ground for relief in his state petition for habeas relief. However, in denying the petition, the First DCA did not issue a written opinion. Thus, no state court has explained the rationale for denying relief on this claim. Under that circumstance, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Wilson v. Sellers*, 138 S.Ct. 1188, 1195 (2018), *citing Harrington v. Richter*, 562 U.S. 86 (2011).

The undersigned finds that Petitioner has not met that burden.  Peterson's claim that no evidence was adduced at trial that the acts of sexual battery on J.C.B. occurred when he was under twelve is not supported by the record.  J.C.B. testified that Peterson began living with his family when J.C.B. was seven or eight years old. ECF Doc. 31-2 at 90.  He testified that Peterson performed oral sex on him while he was sleeping on four different occasions and that Peterson asked J.C.B. to perform oral sex on one other occasion.  *Id.* at 93-94.  As to the ages at which such contact occurred, J.C.B. was asked the following question: "These events are occurring <u>over the four-year period</u> he is living with you.  So, you are between seven and 11 or eight to 12?"  J.C.B. answered, "Correct."  *Id.* at 94 (emphasis added).  The common sense

meaning of the expression "over the four-year period" is that the events were spread out over that time period.  In other words, Peterson's argument, which hinges on all four instances of sexual contact occurring in a 7-day period between December 24 and December 31, is simply not a reasonable interpretation of J.C.B.'s testimony. Similarly, Peterson's claim that J.C.B. testified that the acts of sexual battery occurred "sometime between eight and twelve" is a misinterpretation of the record.[5]

Accordingly, the undersigned finds a reasonable basis exists for the First DCA to deny the petition.  *See Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1144-45 (11th Cir. 2005).

B.    Ground Two – Faulty Jury Instruction

Petitioner argues appellate counsel was ineffective for "failing to raise as fundamental error the fundamentally defective jury instruction regarding capital sexual battery as to Count II."  ECF Doc. 1 at 7.  As noted above, Peterson was charged with two counts of sexual battery against a minor:  Count I was against the female victim, S.G.B., and Count II was against the male victim, J.C.B.  When the Court instructed the jury on Count I, the Court specifically laid out the three elements the state must prove beyond a reasonable doubt to find Peterson guilty of sexual battery - that (1) S.G.B. was less than 12 years old; (2) Peterson committed the act upon or with S.G.B. in which he penetrated her vagina with his finger(s) or contacted

---

[5] Also, in Defendant's Motion to Exclude Williams Rule Evidence, Defendant states "[b]oth victims were under the age of 12 years old when the sexual abuse began."  ECF Doc. 31-1 at 101.

her vagina with his mouth or tongue, and (3) Peterson was 18 years or older at the time. ECF Doc. 31-3 at 13-14. However, after correctly announcing the three elements for sexual battery on Count I, the judge omitted the second element of the offense when instructing the jury on Count II – sexual battery against J.C.B. The judge's instruction was that "the state must prove the following three elements beyond a reasonable doubt: 1. J.C.B. was less than twelve years of age [and] 2. Anthony James Peterson committed an act upon or with J.C.B in which Anthony James Peterson was 18 years of age or older at the time." ECF Doc. 31-3 at 15-16. The instruction as read by the trial judge did not require "the act" to be one in which Peterson contacted the penis of J.C.B. with his mouth or tongue.

Peterson raised this same ground for relief in his state habeas petition. However, the First DCA denied the petition *per curiam* and without written opinion. *Id.* at 29. Thus, this Court cannot grant habeas relief unless the Court determines "there was no reasonable basis for the state court to deny relief." *Wilson*, 138 S.Ct. at 1195.

Again, Petitioner has not met this burden. This claim would not have been meritorious on appeal. Because trial counsel did not contemporaneously object to the instruction as read, the Court must assume (1) that the appellate court would have applied a fundamental error analysis to the error and (2) that the appellate court, in denying the claim, must have found no fundamental error. *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1299 (11th Cir. 2017), *cert. denied sub nom. Pinkney v. Jones*, 139

S. Ct. 193 (2018) ("[W]e interpret the Second District Court of Appeal decision rejecting Pinkney's ineffective assistance of appellate counsel claim as having been based on the theory that while the forcible felony exception instruction was error, it was not fundamental error and, as a result, the direct appeal court would not have decided that claim on the merits if appellate counsel had raised the claim.").

A finding that the jury instruction was error, but not fundamental error, is reasonable in this case. First, the Florida Supreme Court has "consistently held that not all error in jury instructions is fundamental error." *Garzon v. State*, 980 So. 2d 1038, 1042 (Fla. 2008). Also, the United States Supreme Court has acknowledged that "[u]nlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States*, 527 U.S. I, 9 (1999). Instead, in *Neder*, the Supreme Court held that "the omission of an element is an error that is subject to harmless-error analysis." *Id.* at 15. (citing *Chapman v. California*, 386 U.S. 18, 24 (1967) (stating that the test to determine whether an error is harmless is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.")); *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) ("[A]n otherwise valid conviction should not be set aside if the reviewing court may

confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.").

Moreover, federal habeas relief is unavailable "for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). A jury instruction that "was allegedly incorrect under state law is not a basis for habeas relief," *id.* at 71-72, because federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, "'so infected the entire trial that the resulting conviction violate[d] due process.'" *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

The undersigned does not find that the error by the trial court resulted in a conviction that violated Petitioner's due process. Although the trial judge's oral pronouncement of the instruction contained an error, the judge sent a copy of the written instructions back with each juror which had the correct three elements of the charge involving J.C.B. ECF Doc. 31-2 at 174. Also, the judge correctly read the three elements for sexual battery under Count I, which was the same offense as that

alleged in Count II, except that it involved a female victim.  ECF Doc. 31-3 at 13-16.

Also, in closing argument, the prosecutor went through all three elements for Count II and stated that "[t]he act that is prohibited here is any oral contact with the penis", ECF Doc. 31-2 at 186.  He then went through the elements, stating, "The elements of sexual battery as to Jesse Briggs, the victim was less than 12 years of age. . . . the defendant committed an act with or upon the victim in which the mouth of the defendant contacted the penis of the victim.  That is what you need.  Of course, the defendant was over 18."  *Id.* at 186-87.

Additionally, there was evidence presented at trial through the testimony of J.C.B. that Peterson's mouth made contact with J.C.B.'s penis.  J.C.B. was 20 at the time of the trial.  ECF Doc. 31-2 at 90.  He testified that Peterson "would come into my room when he thought I was sleeping on a couple of occasions, and he would perform oral sex."  *Id.* at 91.  J.C.B. was specifically asked "what part of your body was involved in this activity" and his response was "my penis."  *Id.* at 92.  He was also asked "what part of [Peterson's] body was involved," and J.C.B. responded "his mouth."  *Id.*  He was specifically asked "Did his mouth contact or did your penis go inside or penetrate his mouth during any of these events" and J.C.B. said "Yes."  *Id.*  He was asked whether he recalled "Peterson's mouth having contact with [his] penis" on all four occasions he discussed and J.C.B. said "yes."  *Id.* at 93.  While Peterson states in his petition that whether Peterson had any sexual contact with

J.C.B. "was a greatly contested issue" and that Peterson "denied any and all allegations relating to whether Peterson's mouth ever had contact with J.B.'s penis at any time," since Peterson did not testify, J.C.B.'s testimony was unrefuted.

Accordingly, any error in the trial court's oral jury instructions as to Count II was harmless. The undersigned finds a reasonable basis exists for the First DCA's denial of relief as to this ground.

C.    Ground Three:  Failing to Sever Count I and Count II

Peterson argues trial counsel was ineffective for failing to move for separate trials on Count I and Count II. Specifically, Peterson argues the facts of Count I involved different ages, genders and acts than Count II, and "as a result they were immaterial and irrelevant to any issue involved in the trial of Count II." ECF Doc. 1 at 10. Trying Count I along with Count II, argues Peterson, was particularly prejudicial because the charges in Count I relating to S.G.B. were brought up in 2004 and "determined to be without foundation."[6]  *Id.*

Since the First District issued a *per curiam* affirmance without written opinion of the denial of Peterson's 3.850 Motion, this Court will "look through" that decision

---

[6] When Petitioner raised this issue in his 3.850 motion, he also argued that failing to sever was prejudicial because the testimony of J.F. was admitted under the *Williams* Rule (*Williams v. State*, 110 So. 2d 654 (Fla. 1959), but only as to Count II relating to J.C.B., and was not admissible for purposes of Count I, relating to S.G.B. The state court denied relief, finding that motion to sever would have been unsuccessful, and the First DCA affirmed. Petitioner has abandoned this argument in the instant petition because any prejudicial effect J.F.'s testimony had on Count I is irrelevant since the state court subsequently vacated Count I. Thus, the only judgment at issue for this habeas petition is Count II.

to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. *See Wilson*, 138 S. Ct. at 1192. Here, that last decision comes from the state court's final order on the 3.850 motion, denying this claim on the merits. In that order, the state court rejected this ground for relief, finding that such a motion to sever would have been denied because "the victims in this case are siblings; the charged offenses occurred against both victims in the same home during the same time period; and, Defendant admitted to the male victim, during the time that the charged offenses were occurring, that he was also molesting the female victim." The state court cited to the trial transcript (Trial Transcript at 38 (lines 10-20)) and to *Shermer v. State*, 935 So. 2d 74, 77 (Fla. 4th DCA 2006) ("The charges against Ang. G. and And. G. are tied together in a temporal or episodic sense, because they were committed at the same time and in the same place.") to support of its determination. ECF Doc. 31-5 at 175.

This state court's factual determination is supported by the record and is not unreasonable. The state court's application of the law is also correct i.e., an attorney is not ineffective for failing to raise or preserve a meritless issue. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992). Additionally, "[u]nder Florida law, as under federal law, the question of whether to grant a motion for severance rests with the sound discretion of the Trial Court and will only be reversed upon a clear showing by the defendant that the Trial Court abused its discretion." *Alvarez v.*

*Wainwright*, 607 F.2d 683, 685 (5th Cir. 1979).[7] *Kablitz v. State*, 979 So.2d 969 (Fla. 4th DCA 2008); *Sule v. State*, 968 So.2d 99 (Fla. 4th DCA 2007).  Pursuant to Fla. R. Crim. P. 3.152(b)(1)(A), "[s]everance is not necessary 'when all of the relevant evidence regarding the criminal offense is presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct, and statements, and can then apply the law intelligently and without confusion to determine the individual's guilt or innocence.'" *McLean v. State*, 754 So.2d 176, 178 (Fla. 2d DCA 2000) (citing *McCray v. State*, 416 So.2d 804, 806 (Fla.1982)).

Here, the evidence was presented in such a manner that the jury could easily separate Peterson's acts against the female victim from those against the male victim.  Also, the jury instructions clearly separated the offenses relating to each victim.  Indeed, even though the State charged Peterson with two counts of sexual battery, he was convicted of a lesser offense as to S.G.B.  Moreover, even though the same allegations made by S.G.B. in Count I were determined to be unfounded in 2004, both S.G.B. and her mother testified that S.G.B.'s mother told her to lie to investigators in 2004 and recant the accusation of molestation.  ECF Doc. 31-2 at 75, 81-82.

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981.

Even assuming the trial court would have granted a motion to sever had counsel moved to do so, Petitioner failed to establish a substantial likelihood that he would have been acquitted in Count II, as necessary to establish the prejudice prong under *Strickland*. *Harrington v. Richter*, 562 U.S. 86, 112 ("The likelihood of a different result must be substantial, not just conceivable.") (citing *Strickland*, 466 U.S. at 693). Even had Petitioner proceeded to trial on Count II only, the jury still would have heard J.C.B. testify that Petitioner came into his room when he thought he was sleeping "and he would perform oral sex." ECF Doc. 31-2 at 91. The jury still would have heard J.C.B. testify that his penis and Petitioner's mouth came into contact during these events on multiple occasions. *Id.* at 91-92.

As to Count II, the jury also heard from a witness named J.F., who testified at trial that he was twelve years old in 1994 (when Peterson was 18) and that the two had known each other for a few weeks from playing video games together at a public arcade. *Id.* at 151. One day, Peterson convinced J.F. to come to his house. However, Peterson brought J.F. to an abandoned house where he asked J.F. if he wanted Peterson to perform oral sex on him. After J.F. declined, Peterson offered him money to let him, but J.F. refused. When J.F. asked to leave, Peterson at first restrained him but then let him leave when Peterson was sure no one was watching. *Id.* at 152-56. Peterson was convicted of committing a lewd or lascivious act in the presence of a child under 16 and false imprisonment. ECF Doc. 31-1 at 100. The state court allowed J.F. to testify under the *Williams* Rule, finding it relevant to

Count II.  ECF doc. 31-1 at 114.  J.F.'s testimony was used by the prosecution to specifically to corroborate J.C.B.'s testimony.

Thus, the findings of the state court that counsel was not deficient and that the decision to not move for a severance did not prejudice Peterson were not unreasonable determinations of the facts in light of the evidence presented in the State court proceeding, and the state court's decision was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

D.    Ground Four:  Impeaching the Witnesses

Petitioner argues in Ground Four that trial counsel was ineffective for failing to impeach J.C.B.'s mother and J.C.B. with their prior denials that Peterson sexually molested J.C.B.  ECF Doc. 1 at 12.

Since the First District issued a *per curiam* affirmance of the denial of Peterson's 3.850 Motion, this Court once again will "look through" that decision to the state court's final order denying Petitioner's 3.850 motion.  *See Wilson*, 138 S. Ct. at 1192.  In that decision, the state court denied relief because "[t]he record reflects that defense counsel did impeach the victims' and their mother with the facts of the prior 2004 investigation, as well as their deposition testimony."  ECF Doc. 31-5 at 175.

The state court's conclusion is reasonable and supported by the record. Defense counsel and the prosecutor questioned Caroline Williams, the victims'

mother, about the fact that she told S.G.B. to lie to investigators in 2004. ECF Doc. 31-2 at 106-07. Defense counsel used the facts of the prior investigation to get Williams to admit that she had told her daughter to lie in 2004. *Id.* at 126. Defense counsel also extensively crossed Williams with several letters she wrote to Peterson while he was incarcerated to show that she was still in love with him and had gotten the victims to make these stories up because she was a woman scorned. *Id.* at 108-21. Defense counsel also got Williams to contradict S.G.B's testimony as to the reason why Williams told her daughter to recant her abuse allegations to investigators in 2004: Williams said it was because she was afraid Peterson would come after them, *id.* at 125; S.G.B. said her mother told her, "she would never be happy again if he went to jail because of me." *Id.* at 75.

Similarly, defense counsel used J.C.B.'s deposition to cross J.C.B. about why he did not come forward in 2004 when S.G.B. came forward and why he was coming forward so many years later. ECF Doc. 31-2 a 98-100. She also used his prior testimony to point out that during his deposition, J.C.B. said that he came forward in 2011 because "if we both went forward, we would make a decent enough case so he would have to spend time in jail or prison." *Id.* at 99. Defense counsel pointed out that J.C.B.'s decision to come forward arose after J.C.B. saw Peterson at Starbucks with his new girlfriend. *Id.* at 99. Additionally, defense counsel extensively discussed S.G.B.'s deposition testimony with her on cross examination as well to establish that her mother had urged her to bring charges against Peterson

in 2004 because he was caught with another woman, ECF Doc. 31-2 at 84, but that her mother had urged her to later recant the abuse accusations and lie that she had made them up, *id.* at 86.

In short, the record shows that trial counsel extensively and skillfully used the depositions, the trial record, the letters and the prior investigation in 2004 to impeach the victims and the mother. The state court's denial of relief on this ground did not involve an unreasonable application of clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

### E.  Evidentiary hearing

The undersigned also finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Here, as described above, Peterson's factual allegations are affirmatively contradicted by the record. Therefore, an evidentiary hearing is not appropriate in this case. *See Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002) (citation omitted).

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is

issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That Petitioner's petition under 28 U.S.C. § 2254 be DENIED, without an evidentiary hearing;

2. That a certificate of appealability be DENIED; and

3.    That the clerk close this matter.

DONE AND ORDERED this 22nd day of October, 2019.


*s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.